## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

### Docket No. 23-cr-10053-DJC

_____

**UNITED STATES OF AMERICA**      )

      )

**v.**      )

      )

**REY DAVID FULCAR**      )
_____

## MOTION TO DISMISS

## INTRODUCTION

> **"**A well-regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms, ***shall NOT be infringed.*****"**

U.S. Const. amend II (ratified on December 15, 1791) (emphasis added).

> "In declaring what shall be the supreme law of the land, the constitution itself is first mentioned; and not the laws of the United States generally. . . that a law repugnant to the constitution is void; and the courts, as well as other departments, are bound by that instrument."

*Marbury v. Madison,* 1 Cranch 137 (1803).

> "[W]hen the Second Amendment's plain text covers an individual's conduct, The Constitution ***presumptively protects*** that conduct."

*N.Y. State Rifle & Pistol Assoc. v. Bruen*, 142 S. Ct. 2111, 2126 (2022) (emphasis added)

From review of the above, we see that over 200 years have elapsed within this country regarding the enactment of the 2nd Amendment and there is still litigation addressing the scope of what the original intention meant. The main lesson we can draw from these temporal book-ends is that a very core concept has not been altered – that the right to bear arms is "fundamental".

*Mcdonald v. City of Chicago*, 130 S. Ct. 3020, 3042 (2010). History has also taught us that in between these book-ends we have also experienced a time where classes of people were

categorically outlawed from exercising that right.  *See Dred Scott v. Sanford*, 60 U.S. 393 (1856)

(Blacks being looked at as non-citizens exempted from constitutional protections – lacking all sorts

of fundamental rights, including to "keep and carry arms wherever they went").[1]

The obvious differences between people of a protected class and felons aside, the question

has now come to the forefront in 2023 as to whether legislation first enacted in **1938** can "strip

felons of the right to bear arms simply because of their status as felons". (quoting *Kanter*, 919 F.3d

at 451 (Barrett, J., dissenting)).[2]  But, and "[i]n the wake of *Bruen,* [the notion of] assessing a gun

restriction by balancing a government's interest (safety of citizens) with the burden imposed on an

individual's right to bear arms is out".  *Range v. Attorney Gen,* 69 F. 4th  96, 111 (2023).  Instead,

laws that burden the 2nd Amendment must have "a well-established historical ***analogue*. . .".** *Bruen*

at 2122 (emphasis in original).  "[A]nalogical reasoning" is therefore required to determine

whether § 922(g)(1) is "relevantly similar" to a law from a period of history that sheds light on the

Second Amendment's meaning.  *Id.* at 2132.

In light of the new legal framework in *Bruen*, which has jettisoned the aforementioned

means-end approach before determining the constitutionality of gun regulations, the up-to-the-

minute question regarding its constitutionality has now been framed as follows:  Has the

government demonstrated that banning all felons from possessing a firearm is consistent with

---

[1] The 13th Amendment to the United States Constitution, however, abolished slavery and effectively overruled the *Dred* decision.

[2] The first federal statute disqualifying felons from possessing firearms was not enacted until 1938, which disqualified misdemeanants who had been convicted of violent offenses.  *See the* Federal Firearm Act, c. 850 sec. 2(f), 52 Stat. 1250, 1251.  The Act covered only a few violent offenses, but the absolute ban on possession by all felons was not enacted until 1961. Pub. L. 87-342, 75 Stat. 757 (extending the disqualification to all persons convicted of any "crime punishable by imprisonment for a term exceeding one year"). In 1968 Congress changed the "receipt" element of the 1938 law to "possession," giving 18 U.S.C. § 922(g)(1) its current form.

America's "historical tradition of firearm regulation?[3]  In other words, can any class of people (and in this case felons) be so broadly prohibited as § 922(g)(1) proscribes?   It is without question that this Court has the vested authority (from our Supreme Court) in announcing one way or the other. *See Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010) ("Once a case is brought . . .  no general categorical line bars a court from making broader pronouncements of invalidity in properly 'as-applied' cases.").  In doing so, it is also fundamental to the announcement that "a penal statute is not to be construed generously in the Government's favor". *United States v. Bass*, 404 U.S. 336, 348 (1971).  As a result, grounds appear to exist that the crime of being a felon-in-possession of a firearm in violation of 18 U.S.C. § 922 (g)(1) is unconstitutional.

COMES NOW THE Defendant, Rey David Fulcar ("Fulcar"), and moves to dismiss the indictment (ECF no. 1) against him on the grounds that § 922(g)(1) is unconstitutional, both facially and as applied to him, because it infringes upon his 2nd Amendment rights by banning ALL persons convicted of a felony, and in particularly against  Mr. Fulcar, because it infringes upon his individual right to possess a weapon in the home.  Mr. Fulcar argues that possessing a firearm within the home is a core right protected by the Second Amendment. *See District of Columbia v. Heller,* 128 S. Ct. 2783, 2817-18 (2008) (Supreme Court opining that any absolute prohibition on the keeping of firearms in the ***home*** for self-defense would be considered invalid under any "standard[ ]of scrutiny", since "the need for self, family, and property is most acute").

Now, it is not lost upon Mr. Fulcar that the 1st Circuit has decided, some 12 years ago now, that § 922(g)(1) passed constitutional scrutiny as it promulgated in *United States v. Torres-Rosario*, 658 F. 3d 110, 112-13 (1st Cir. 2011).  But Mr. Fulcar argues that the *Bruen* decision has since devised a new framework, and not applied by the *Torres-Rosario* court, but which now

---

[3] This evidentiary burden to prove this question falls upon the government. *Bruen* at 2119.

broadens gun rights past this ruling of old.  By Fulcar's filing of this motion, all he seeks is for this Court to apply the *Bruen* standard and rule on the merits utilizing that standard.  *See Rivers v. Roadway Express*, 511 U.S. 298, 312 (1994) (hierarchical relationship of Supreme court to lower courts mandates that where "the [Supreme] Court has spoken, it is the duty of other courts to respect that understanding of the governing rule of law").  Fulcar presents the following in support:

## LEGAL BACKGROUND

Being a felon-in-possession of a firearm is described as follows:

> "It shall be unlawful for any person . . . who has been convicted in any court of [] a crime punishable by imprisonment for a term exceeding 1 year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce".

*18 U.S.C. § 922(g)(1).*

To determine whether *now* this aforementioned statute would fail to pass constitutional muster does require a brief review of relevant Supreme Court jurisprudence – with only 3 cases of interest decided in 2008, 2010, and 2022 respectively:

- **District of Columbia v. Heller, 128 S. Ct. 2783 (2008)**; There, Mr. Heller challenged the District of Columbia's restrictions which denied him the right to possess a firearm in his home. *Id.*  Heller's challenge was dismissed at the lower federal level, which opined that that the 2nd Amendment protects the right of the state to bear arms and "not the individual." *Parker v. District of Columbia,* 311 F. Supp. 2d 103, 107 (2004).  Justice Scalia for the majority reversed, opining that the term "right of the people" creates "a strong presumption that the 2nd Amendment right is exercised individually and belongs to **all** Americans." *Id.* at 2791 (emphasis added).[4]

---

[4] Justice Scalia also offered the following rider and promise in the Court's opinion: "Like most rights the right secured by the Second Amendment is not unlimited." *Heller* at 2786.  [N]othing in our opinion should be taken to cast doubt on longstanding prohibitions by on the possession of firearms by felons. . ." *Id.* at 2816-17.  "[T]here will be time enough to expound upon the historical justifications for the exceptions we have mentioned if and when those exceptions come before us." *Id.* at 2821.  Fulcar posits that no substantive analysis has ever been proffered by our nation's highest court on the constitutionality of § 922(g)(1), and

4

- **Mcdonald v. City of Chicago, 130 S. Ct. 3020 (2010)**;  Here, we see the same dispute on a gun restriction similar to *Heller,* but originating within the State of Illinois as opposed to the territorial District of Columbia. *Id.* The Supreme Court opined in *Mcdonald* (and consistent with *Heller*), that "[T]he Second Amendment right is fully applicable to the States through the Fourteenth Amendment". *Id.* at 3023. The court further stated that "[u]nder our precedents, if a Bill of Rights guarantee is fundamental from an American perspective . . that guarantee is fully binding on the States". *id.* at 3046.[5]

- **New York State Rifle & Pistol Association v. Bruen,** 142 S. Ct. 2111 (2022); Lastly, Mr. Bruen sought to challenge a firearm regulation out of New York which required a heightened or "special need" before possessing a handgun.  The 2nd Circuit upheld New York's special need requirement, finding it "substantially related to the achievement of an important governmental interest". *Id.* at 2125 (citation omitted).  Justice Thomas writing for the majority rejected that approach, and authored a new standard which abrogates weighing Second Amendment rights against the government's interests in public safety.  It ultimately opined:

  - "[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  To justify its' regulation, the government may not simply posit that the regulation promotes an important interest.  Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation."

*Id* at 2126.

It would appear that based upon this last ruling, 2 legal questions rise to the surface upon which Mr. Fulcar seeks a ruling from this court:  1) whether the plain text of the 2nd Amendment covers Mr. Fulcar's conduct; and 2) whether the regulation at issue – the ban upon him because he is felon – is consistent with and/or "relevantly similar" to a law from a period of history that sheds light on the Second Amendment's meaning.  Mr. Fulcar submits that there can be NO room for debate on whether the Constitution protects his "conduct", and therefore the constitutional solving of the aforementioned 2 questions focuses moreso on the regulation in question itself – whether barring felons from gun possession is consistent with this Country's tradition of firearm regulation.

---

particularly via the deployment of its' brand-new test espoused under *Bruen.*
[5] Justice Scalia's rider in *Heller* was also cited by the *McDonald* court.  *Id.* at 3047.

**ARGUMENT**

**I.**

**THE SECOND AMENDMENT'S PLAIN TEXT COVERS THE CONDUCT OF POSSESSION OF A FIREARM IN ONE'S HOME – WHICH IS THE CONDUCT ALLEGED BY MR. FULCAR IS TO HAVE ENGAGED – AND IT'S "THE PEOPLE" WHO ARE GIVEN THIS PROTECTION – WHICH INCLUDES MR. FULCAR**

The foundational rule is simply stated as follows:  "[W]hen the Second Amendment's plain text covers an individual's **conduct**, the Constitution presumptively protects that conduct." *Bruen* at 2126 (emphasis added).   As a result, step one of the *Bruen* analysis requires us to look at the "conduct" being regulated, not the status of the person performing the conduct.  *Bruen* at 2126. *See also United States v. Bullock*, No. 3:18-CR-165-CWR-FKB (June 28, 2023, S.D. Mississippi) (J., Reeves) (Judge dismissing indictment charging Bullock for being a felon-in-possession of a firearm, finding *inter-alia,* that Mr. Bullock's "conduct" of firearm possession and not his "status" as a felon would be the operative area for inquiry in the *Bruen* stage-one question). In Mr. Fulcar's case, his conduct is akin to that of *Mr. Heller, Mr. McDonald, Mr. Bruen,* and any other person in America who wants to keep a gun in the home, but where the only difference is that Mr. Fulcar is dubbed being a criminal for the same conduct.   In other words, one person can do it lawfully and another one cannot.  Mr. Fulcar knows of no other conduct in America where one class of persons are "subject to an entirely different body of rules than the other Bill of Rights guarantees that we have held to be incorporated into the Due Process Clause". *Mcdonald* at 3044 (Supreme Court opining the right to bear arms for lawful purposes as held in *Heller* cannot be treated as a "second-class right subject to an entirely different body of rules" and such treatment would be "at war" with their central holding in *Heller*).   Since *Heller* has already resolved that Fulcar's mere possessing a firearm within the home is at the "core" of the rights so protected (*Heller* at 2787), Fuclar therefore

strains (without success) to envision any argument in support that his identical "conduct" is not so covered by the 2nd Amendment.

In fact, the aforementioned holding in *Heller* also speaks to a very important point which would be relevant to facts of this case. The *Heller* court's ruling seemed to go to great pains to emphasize just how enshrined the right of Americans (to possess a weapon in the home without restriction) particularly is. Take a look at the following opinion:

> "Under any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning from the **home** the most preferred firearm in the nation to 'keep' and use for protection of one's home and family (citation omitted) would fail constitutional muster . . . Whatever the reason, handguns are the most popular weapon chosen by Americans for self-defense in the home, and a complete prohibition of their use is invalid".

*Id.* at 2817-18 (emphasis added).

This emphasis on home possession renders it without question that Mr. Fulcar's ***doing*** exactly what the Supreme Court has expressly protected would rendered him protected as well, unless and for some inexplicable reason he is NOT part of "the people".

Mr. Fulcar states confidently that as an American citizen he is one of "the people" under the Second Amendment's plain text. *See Heller*, 554 U.S. at 581 (nothing that Second Amendment right "belongs to all Americans"); *id* at 580 (quoting prior decision describing "the people" as the "class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community"); *see also, e.g.,* U.S. Const. amend. I (using "the people" in Assembly-and-Petition Clause); U.S. Const. amend. IV (using "the people" in Search-and-Seizure Clause). *Bruen* reiterates that the Second Amendment guarantees to "all Americans" the right to keep and bear arms. 142 S. Ct. at 2156 (quoting *Heller*, 554 U.S. at 581). Again, any argument to the contrary would defy the plain text as described above, that his

status as a felon would exclude him from "the people".

But however, and in spite of his protected activity guaranteed to him since 1791, Mr. Fulcar has not only been stripped of the right to arm himself in his home, but he has been charged criminally for his exercise of the same.  He contends that based upon the language in *Heller*, which denounces any such deprivation to all Americans, any such statute which says otherwise (and in particular § 922 (g)(1)) would ***presumptively*** infringe upon that right.  In reality, Fulcar contends that the query here is not really about whether § 922(g)(1) is presumptively unlawful, but whether government can rebut this presumption via the more relevant stage-two inquiry.[6]

## II.

### THE APPLICATION OF SECTION 922 (g)(1) IS NOT CONSISTENT WITH THE NATION'S HISTORICAL TRADITION OF FIREARM REGULATION

The government cannot meet its burden of establishing that § 922(g)(1), facially, or as applied to Mr. Fulcar (a mere possessor of a firearm within the home), is "consistent with the Nation's historical tradition of firearm regulation."  *Bruen*, 142 S. Ct. at 2129–30.  Indeed, the Fifth

---

[6]  Mr. Fulcar anticipates that the government may attempt to allege that the 2nd Amendment's protections extend only to "law abiding responsible" citizens. *See e.g., United States v. Belin*, No. 21-CR-10040-RWZ (Judge Zobel denying to dismiss an indictment after performing a *Bruen* analysis, opining the activity regulated by the felon-in-possession statute falls outside the scope of the 2nd Amendment's protections because it does not impact "law-abiding responsible citizens") (citations omitted).  To be sure however, while *Heller* did find that law-abiding responsible citizens have the right to arm themselves in the home, it did not find ALL felons to be irresponsible law-breakers and therefore outside the scope of the term "the people." *See Heller*, 554 U.S. at 580–81 (discussing meaning of "the people").  To react with such a final categorization of them suggests a branding which would outlast their degree of past mistake.  It would also judge some but not all.  For persons who commit drunk drivings, disorderlies, affrays, and threats are not law-abiding, and they certainly are not "responsible", as each crime puts our public at risk, teaching us that "a felon is not always more dangerous than a misdemeanant". *Lange v. California¸* 141 S. Ct. 2011, 2020 (2021)  Lastly, the Supreme Court has never with any textual commentary endorsed the concept of "law-abiding" as discounting felons but still keeping other 'law-breakers' within the fold.  .  Logic would not support dividing "the people" into classes of one or the other under this broad-brush of a stroke.  After *Heller* and its progeny, courts should no longer treat the 2nd Amendment as a "second class right". 561 U.S. 742, 780 (2010); *see also Range*, 69 F. 4th at 101 (concluding that persons with felony convictions are part of "the people" and presumptively retain 2nd Amendment rights). *See also United States v. Jackson*, No. ELH-CR-22-141 (D. MD.) (J. Hollander) ("Accordingly I shall assume, *arguendo*, that Jackson is among "the people" to whom the 2nd Amendment applies, despite his status as an indictee").

Circuit has stated that "the federal felony firearm possession ban, 18 U.S.C. § 922(g)(1), 'bears little resemblance to laws in effect at the time the Second Amendment was ratified,' as it was not enacted until 1938, was not expanded to cover non-violent felonies until 1961, and was not re-focused from receipt to possession until 1968." *Nat'l Rifle Ass'n of Am.*, 700 F.3d at 196, *abrogated by Bruen*, 142 S. Ct. 2111 (quoting *United States v. Booker*, 644 F.3d 12, 23–24 (1st Cir. 2011)).   Under *Heller v.Dist. of Columbia*, 670 F.3d 1244, 1253 (D.C. Cir. 2011) we also see that: "[S]tates did not start to enact [felony-based prohibitions on possession] until the early 20th century.".   The question then is begged:  If the banning of felons is contained within our historical tradition, why was it done so late after the ratification of the 2nd Amendment in 1791?  Mr. Fulcar answers the question by recognizing that this country's neoteric measure of banning felons has only found its' place into our way of life as a responsive methodology to preserve public safety. *See United States v. Chovan*, 735 F. 3d 1127, 1150 (2013) (18 U.S.C. § 922 is governmental action directed towards preventing violence and preserving gun safety).  *See also Gould v. Morgan,* 907 F. 3d 659 (2018) (1st Circuit decision (pre *Bruen*) allowing the Massachusetts legislature to make policy judgments in dealing with a societal problem like gun violence, and therefore upholding a 2nd amendment constitutional challenge to MA firearm statute).   "But the enshrinement of constitutional rights necessarily takes certain policy choices off the table".  *Heller* at 2822.   This is all par for the course in any event, as the underscoring of the above simply endorses a means-end approach which has since been abandoned since *Bruen*.  *Id.* at 2117 (Justice Thomas holding that "[t]he Court rejects that two-part approach as having one step too many").

Residing now in the present with Justice Thomas' up-to-date approach, we must conclude that the recent striping felons of their right to firearm possession in the home is not "longstanding" within our historical tradition.  *United States v. McCane*, 573 F.3d 1037, 1048(10th Cir. 2009)

(Tymkovich, J., concurring) ("[M]ore recent authorities have *not* found evidence of longstanding dispossession laws.").  Numerous scholars too, have concluded that "no colonial or state law in eighteenth-century America formally restricted the ability of felons to own firearms." *See, e.g.*, Larson, *supra*, at 1374; C. Kevin Marshall, *Why Can't Martha Stewart Have A Gun?* 32 Harv. J. L. & Pub. Pol'y 695, 698 (2009) (observing that such prohibitions have their origins in the twentieth century).  In other words, gun dispossession "is firmly rooted in the twentieth century and **likely bears little resemblance to laws in effect at the time the Second Amendment was ratified**." *United States v. Booker*, 644 F.3d 12, 23–24 (1st Cir. 2011) (emphasis added).  Further, and "[a]s for convicted criminals, Colonial societies do not appear to have categorically prohibited their ownership of firearms." *See e.g.*, *United States v. Staten*, No. 10-5318, 2011 WL 1542053 (4th Cir. 2011).

Against that backdrop, the government cannot meet its burden of establishing that this application of 18 U.S.C. § 922(g)(1) is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2129–30.  Indeed, to uphold this application of § 922 (g)(1), the prosecution must establish a historical "*tradition*"— a robust record of regulations demonstrating an accepted and enduring restriction on the 2nd Amendment right.  *See, e.g.*, *id.* at 2156 (demanding a "broad tradition," not "outlier" regulations).  *Bruen* instructs that "the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id.* at 2131.  The inquiry may also turn upon "how" and "why" historical regulations burdened the 2nd Amendment right. *Id.* at 2132–33.  It's the government's burden in all of this regard and Mr. Fulcar will wait for their response, but he anticipates they will be unable to establish the requisite historical tradition, with section 922 (g)(1) thus being rendered unconstitutional as applied to Mr. Fulcar.

### III.

### BRUEN'S HOLDING IS NOT IN CONFLICT WITH *HELLER'S* DICTUM

Reverting back to the *Heller* decision, we see that the Court did give some advisory sentiments stating that: "[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions by on the possession of firearms by felons . . .".   To be sure however, the issue presently before this Court was not before the Supreme Court in *Heller*, and as such the aforementioned advisory sentiment would be considered "dicta".  *See Voisine v. United States*, 579 U.S. 686, 715 (2016) (Thomas, J., dissenting on other grounds) ("*Heller* approved, ***in dicta,*** laws that prohibit dangerous persons, including felons and the mentally ill, from having arms.") (emphasis added). The Seventh Circuit has also chimed into the discussion:

> "The language we have quoted warns readers not to treat *Heller* as containing broader holdings that the Court set out to establish. . . . what other entitlements the Second Amendment creates and what regulations legislatures may establish were left open."

*United States v. Skoien*, 614 F. 3d 638, 640 (2010); *see also Booker*, 644 F. 3d at 23 (noting the First Circuit finds itself in agreement with *Skoien*, "of the relatively futility of 'parsing these passages of *Heller* as if they contain an answer to the question of whether [a statute] is valid'").

Courts "are not necessarily bound by dicta when a more complete argument demonstrates that the dicta is not correct".  *Kirtsaeng v. John Wiley & Sons, Inc*., 133 S. Ct. 1351, 1368 (2013). Mr. Fulcar argues that any dicta promulgated in *Heller* on the issue of banning felons did not engage in any attempt to answer the ultimate question posed here today: whether banning felons have a similar *analogue* in our history's tradition surrounding the 2nd Amendment.  Furthermore, and as already argued *supra*, Mr. Fulcar submits that our felon-in-possession laws are not longstanding, which calls into question that the *dicta* espoused in *Heller* is not helpful to answering the instant question before this court.   As the Sixth Circuit has observed, absent "historical evidence conclusively supporting a permanent ban on the possession of guns" by felons, "it would

11

be odd to rely solely upon *Heller* to rubber stamp the legislature's power to permanently exclude individuals from a from a fundamental right based on a past [felony conviction]". *Tyler v. Hillsdale Co. Sheriff's Dept.*, 837 F. 3d 678, 687 (6th Cir. 2016) (applied in the context of the mentally ill citizens).

One final notation on the issue of dicta, Mr. Fulcar believes that Judge Reeves in his *Bullock* decision stated it best when he said:

> "The government's arguments for permanently disarming Mr. Bullock however, rests upon the mirage of dicta, buttressed by a cloud of law review articles that do not support disarming him.  In *Bruen*, the State of New York presented 700 years of history to try and defend its' early 1900s-era gun licensing law.  That was not enough.  Bruen requires no less skepticism here, where the challenged law is even younger".

*3:18-cr-00165-CWR-FKB* (June 28, 2023) (Ecf no. 79 at page 5).

It was in 1968 where Congress enacted legislation banning ALL felons from "possession" of a firearm.  The *Heller* court never undertook any analysis regarding the historical *analogue* of this recently enacted statute to decide their question of the day – whether a non-felon's rights were infringed via his desire to keep a weapon in the home.  Here, the question of the day deals with a subgroup of our American nation which was of no interest by the *Heller* court before deciding Mr. Heller's fate.  Ultimately, to elevate *Heller*'s dicta over *Bruen*'s holding would treat the 2nd Amendment right "as a second-class right", contrary to the Supreme Court's admonishment in *McDonald*.  130 S. Ct. at 3044, *supra*.  Mr. Fulcar simply asks that this Court undertake the analysis prescribed in *Bruen*, and rule on the specific issue that has never yet been addressed substantively by the Supreme Court.

## CONCLUSION

The ultimate point here is not to make broad sweeping claims that the 2nd Amendment renders our legislature (Congress) powerless when crafting gun regulations.  For as previously

stated, "[l]ike most rights the rights secured by the Second Amendment is not unlimited". *Heller.*
All Fulcar is saying is that for § 922(g)(1) to render ALL felons as outlawed from arming themselves within their respective homes is overly broad, and not within our historical tradition with respect to gun regulation and therefore fails the test under *Bruen*. Mr. Fulcar stands confident to argue that any application of § 922(g)(1), and in particularly one (as applied to him) which prohibits ALL felons from possessing a firearm in the home fails to pass constitutional muster. *See Heller* at 2819 ("In any case, we would not stake our interpretation of the Second Amendment upon a single law . . . that contradicts the overwhelming weight of other evidence regarding the right to keep and bear arms for defense of the home").

In light of *Bruen¸* and even taking some significant cues from *Heller,* it is without question that firearm restrictions and particularly those prohibiting home use, are presumptively unlawful unless the government can "demonstrate" that the regulation is consistent with this Nation's historical tradition of firearm regulation" *Bruen* at 2126. It is therefore facially unconstitutional as well as applied to Mr. Fulcar. The Defendant respectfully asks to grant his Motion to Dismiss.

REY FULCAR
By his Attorney,

/s/ Gordon W. Spencer
Gordon W. Spencer, Esq.
BBO #630488
945 Concord Street
Framingham, MA 01701
(508) 231-4822

Dated:   August 29, 2023

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the foregoing upon all counsel of record this 29th day of August, 2023 via electronic transmission

_____/s/Gordon W. Spencer_____
Gordon W. Spencer

13